# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| Evaristo Jonathan Garcia,<br><br>                              Petitioner,<br><br>      v.<br><br>W.A. Gittere[1], et al.,<br><br>                              Respondents. | Case No. 2:17-cv-03095-JCM-CWH<br><br>**ORDER** |

Petitioner Evaristo Jonathan Garcia filed a counseled second amended petition for writ of habeas corpus (ECF No. 36) pursuant to 28 U.S.C. § 2254 to challenge his state court conviction. This matter is before the Court for adjudication on the merits of the Second Amended Petition. The Court denies the Second Amended Petition and denies a certificate of appealability.

## I.    Background

### a.    Facts Underlying Conviction[2]

On February 6, 2006, around 8:30 P.M., a shooting took place at a night school, Morris Sunset Academy, resulting in the death of fifteen-year-old, VG. Another individual, GG, a member of the Puros Locos gang, and CP, who was friends with members of the Brown Pride gang, had been arguing.

BM, the brother of CP's friend, and a group of individuals were at the school. ECF No. 44-28 at 175-77. BM approached GG, hit GG, and a large group of students began fighting. *Id.* at 178.

---

[1] According to the state corrections department's inmate locator page, Garcia is currently incarcerated at High Desert State Prison ("HDSP"). Jeremy Bean is the warden of that facility. The Court directs the Clerk of the Court to substitute Jeremy Bean for Respondent Gittere under Fed. R. Civ. P. 25(d).

[2] The Court summarizes the relevant state court record for consideration of the issues. The Court makes no credibility findings or factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the same solely as background to the issues presented in this case. No assertion of fact made in describing statements, testimony, or other evidence in the state court, constitutes a finding by the Court. Failure to mention a category or piece of evidence does not signify it was overlooked in considering the claims.

The fight broke up and everyone fled. *Id*. at 198. A male in a grey hooded sweatshirt with a gun in his right hand shot VG. *Id*. at 199-201.

### b. Procedural Background

Garcia challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County. The state district court entered a judgement of conviction for murder with use of a deadly weapon and sentenced Garcia to a term of ten years to life with a consecutive term of 10 years to life for the deadly weapon enhancement. ECF No. 21-27. The Nevada Supreme Court affirmed the conviction. ECF No. 45-13.

Garcia filed a state habeas postconviction petition and the state district court denied postconviction relief. ECF Nos. 45-19, 45-31. The Nevada Court of Appeals affirmed the state district court's denial of relief. ECF No. 45-39. Garcia initiated this federal habeas proceeding *pro se*. ECF No. 1. Following appointment of counsel, Garcia filed a first amended habeas petition. ECF No. 18.

Garcia returned to state court and filed a second state habeas petition that was denied. ECF Nos. 45-43, 46-4. Following a motion for reconsideration and hearing on the second state habeas petition, the state district court denied relief. ECF No. 46-14. Garcia filed a motion to alter or amend judgment, which was granted, and the state district court set the matter for an evidentiary hearing. The state district court denied relief finding the claims procedurally barred. ECF No. 47-27. The Nevada Supreme Court affirmed finding the state district court properly denied Garcia's petition as procedurally barred. ECF No. 47-43. The Court granted Garcia's motion to reopen, and he filed his Second Amended Petition. ECF Nos. 33, 36. The Court granted Respondents' motion to dismiss, in part, dismissing Ground 4 to the extent it alleges a violation of the Confrontation Clause. ECF No. 71.

## II. Discussion

### a. Ground 1—Violation of *Brady*[3]

In Ground 1, Garcia alleges that the prosecution violated the Due Process Clause of the

---

[3] *See Brady v. Maryland*, 373 U.S. 83, (1963).

Fourteenth Amendment by suppressing material and exculpatory evidence from the defense. ECF No. 36 at 12. Following the shooting, the first officers to arrive on the scene were from the Clark County School District Police Department ("CCSDPD"). Before the Las Vegas Metropolitan Police Department arrived, CCSDPD secured the scene, began its own investigation, and stopped a potential suspect. *Id*. at 8, 23. Despite discovery requests from defense counsel, the State provided police reports from only LVMPD and failed to provide the CCSDPD police reports. *Id*. at 19.

### i. Additional Background

Betty Graves ("Graves"), a campus monitor, testified that after school there were about twenty kids standing in front of the school. ECF No. 44-28 at 123. She observed "the strangest looking young man because he was standing right in front [of] me, and he had on a gray hoody, and all the time he's standing there, he had his hand in his pocket." *Id*. at 124. She saw him fight, but he would not take his hand out of his pocket. *Id*. at 124-25. Graves told a colleague that she believed that he had a gun. *Id*. Graves described him as being 19 or 20, Hispanic, with "little black hair," and that his hood was up. *Id*. at 126-27. Although she did not see the shooting, she assumed the young man she observed was the shooter. *Id*. at 128. Graves testified that GG was not the shooter. *Id*. at 132. At trial, she mentioned that she "got old and forgot things." *Id*. at 133.

The victim's sister, MG, testified that she observed an El Camino with two males and a female park at the school and that one of the males was wearing a grey hooded sweatshirt. ECF No. 44-28 at 197-99. She saw them running towards GG. *Id*. at 197. She described the male in the grey hoody as looking 17 or 18-years-old and that he didn't "have much hair." *Id*. at 200. MG was running behind VG when she saw the male in the gray hoody sweatshirt shoot VG. *Id*. at 199, 201. At the preliminary hearing, MG described the shooter as wearing a black sweatshirt and identified GG as the shooter. *Id*. at 202, 218. At trial, MG could not identify the shooter. *Id*. at 202. CP admitted that she initially lied to the police that GG was the shooter, because she "wanted it to be him." *Id*. at 183.

A witness, Joseph Harris ("Harris") was parked at the school to pick up his girlfriend. ECF No. 44-28 at 111. While waiting, he observed a young man run across the street and another

young man wearing a grey hoody chasing after him. *Id*. at 113-14. Harris saw the young man in the grey hoody shot at the other person and he saw the victim fall against the wall and slide to the ground. *Id*. at 116-17.

Detective Mogg ("Mogg") interviewed GG who was photographed wearing the same all black clothing that he wore during the school day. ECF No. 44-32 at 102-103. Mogg collected information from GG's cell phone. *Id*. at 103. Just prior to the shooting, GG called another member of Puros Locos, ML, 20 times. *Id*. at 107-108.

On February 18, 2006, another shooting occurred wherein Puros Locos member JH was shot at the home of SG, another member of Puro Locos and GG's brother. ECF No. 44-32 at 109-110. Detective Ericcson, who was investigating the shooting of JH, informed another detective that he believed JH might have information regarding the homicide that occurred at Morris Sunset Academy. *Id*. Mogg interviewed JH, who provided the moniker of the shooter. *Id*. at 129-30.

JH testified at trial that on the day of the homicide, he was at SG's apartment with a group, including Garcia, SG, and two other members of Puros Locos, ML and EC. ECF No. 44-29 at 11-12. GG called SG, and SG informed the group they were going to the school for a fight. *Id*. at 14-15. JH testified that he observed ML hand Garcia a gun while at SG's apartment. *Id*. at 16.

When they arrived at the school, JH observed a big brawl in front of the school. *Id*. at 18. He saw the victim run from the circle, then GG and Garcia chased after the victim. *Id*. at 21. JH heard GG and Garcia arguing over the gun and Garcia stated, "I got it." *Id*. JH testified that the victim ran across the street and that he saw Garcia shoot him. *Id*. at 22. He testified that the first bullet hit VG, then Garcia "loaded the whole clip in the kid." *Id*.

EC testified at trial that Garcia had ML's gun. ECF No. 44-25 at 179-80. EC rode in a car with SG to the school but arrived after the rest of the group because they got stuck at a light. *Id*. at 180. When they arrived at the school, EC observed a crowd of people running. *Id*. at 181. EC heard gunshots but did not see the shooting occur. *Id*. Afterwards EC and the rest of the group return to SG's apartment where EC heard Garcia say, "I think I shot him, I think I got him." *Id*.

at 183-85.

Alice Maceo ("Maceo"), a latent print examiner, inspected the firearm. ECF No. 44-32 at 167, 185. Maceo determined there were 3 latent prints on the firearm located on the upper grip below the slide, the back strap, and the grip, but the print on the grip was not sufficient to make a comparison. *Id*. at 195-96. Based on the two sufficient prints, Maceo compared the prints on the firearm to GG and ML's prints and was able to exclude them both. *Id*. at 193, 196. Maceo then compared Garcia's prints to the firearm, and she identified Garcia's right palm print, the webbing between the thumb and index finger, on the back strap of the gun above the grip. *Id*. at 202-205. She testified that the print on the upper grip could be consistent with placing the gun in the toilet, which is where the gun was found. *Id*. at 221-22.

### ii.  State Court Determination

The Nevada Supreme Court reviewed the state district court's denial of Garcia's state habeas petition as procedurally barred. The appellate court reviewed Garcia's *Brady* claim *de novo* holding:

> Given he alleges a *Brady v. Maryland*, 373 U.S. 83 (1963), violation, good cause must be shown by proving the following: "(1) the evidence is favorable to the accused, either because it is exculpatory or impeaching; (2) the State withheld the evidence, either intentionally or inadvertently; and (3) prejudice ensued, i.e. the evidence was material." *State v. Huebler*, 128 Nev. 192 (2012) (internal quotation marks omitted) (explaining that the second and third prongs of *Brady* violation mirror the two requirements for demonstrating good cause for the delay in filing the habeas petition); NRS 34. 726(1).
> …
>
> Garcia satisfied the second prong by showing that the State withheld the evidence. The State had an affirmative duty to disclose favorable evidence in its possession regardless of whether the defense has made a discovery request. *State v. Bennett*, 119 Nev. 589, 601 (2003). The State is "charged with constructive knowledge and possession of evidence withheld by other state agents, such as law enforcement officers," *id*. at 603 (internal quotation marks omitted), even if the evidence "is known only to police investigators and not the prosecutor," *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (internal quotation marks omitted). The State concedes that CCSDPD is a law enforcement agency. The record demonstrates that the first officer on the scene was a CCSDPD officer, seven CCSDPD officers assisted with securing the scene and investigating the crime, and CCSDPD officers stopped a potential suspect. Thus, the State has constructive knowledge that the CCSDPD was involved in the investigation and may have drafted repots. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (providing that "the individual prosecutor had a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case"); *Bennett*, 119 Nev. at 603 (charging the State with constructive knowledge of evidence in a Utah police officer's possession

because the State was aware of the Utah's police assistance in the investigation of the crime).

Nevertheless, Garcia did not demonstrate that the evidence was material. Evidence must be disclosed if it exculpatory and "provides grounds for the defense to attack the reliability, thoroughness, and good faith of the police investigation, to impeach the credibility of the state's witnesses, or to bolster the defense case against prosecutorial attacks." *Mazzan v. Warden, Ely State Prison*, 116 Nev. 48, 67 (2000). If the defense only makes "a general request for information, the evidence is material when a reasonable probability exists that the result would have been different had it been disclosed," and if a specific request is made, "the evidence is material upon the lesser showing that a reasonable possibility exists of a different result had there been disclosure." *Bennett*, 119 Nev. at 600. Even under the lower standard for materiality, Garcia was unable to demonstrate that the evidence was material.

Garcia matched the description of the shooter, his fingerprints were on the gun, a witness testified that he rode in a car with Garcia to the scene of the crime and watched the gun owner hand Garcia the gun, and another individual testified that Garcia told him that he had shot the victim. Additionally, the evidence that a witness's initial description of the shooter was different would not have supported Garcia's defense at trial that one of two other individuals was the shooter because neither of those individual's fingerprints were on the gun. Further, that witness impeached her own testimony at trial because she indicated that she forgot things due to her age. Additionally, in light of the significant evidence of Garcia's guilt at trial, the fact that another individual was stopped near the scene of the crime would not have created the possibility of a different outcome because there was no evidence that the individual connected to the crime or connected to any of the other individuals involved in the crime. Therefore, because Garcia could not demonstrate that the suppressed evidence was material, the district court properly denied Garcia's petition for a writ of habeas corpus as procedurally barred. [FN 1]

> [FN 1] Because Garcia was unable to demonstrate the third *Brady* prong and all prongs are necessary for a *Brady* claim, we need not consider whether he properly demonstrated the first prong.

ECF No. 47-43 at 3-5.

### iii.  Applicable Legal Standard

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The *Brady* rule encompasses evidence "known only to police investigators and not the prosecutor." *Kyles v. Whitley,* 514 U.S. 419, 438 (1995). The duty to produce such material arises even if the defense request is non-

specific or if there is no request at all, however, *Brady* does not establish a "duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *United States v. Agurs,* 427 U.S. 97, 106-07 (1975).

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

### iv.   Analysis

The state supreme court's determination that Garcia failed to demonstrate that the evidence was material is neither contrary to nor constitutes an unreasonable application of federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in the state court record.

Garcia must demonstrate that the improperly withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Materiality "must be evaluated in the context of the entire record." *See United States v. Agurs*, 427 U.S. 97, 112 (1976). The mere possibility an item of undisclosed information might have helped the defense or affected the outcome of the trial does not establish materiality. *See Agurs*, 427 U.S. at 109.

Garcia argues that Graves's credibility was critical to the outcome of Garcia's trial because she was presented at trial as a non-interested witness who excluded the prime alternate suspect, GG, as the shooter. ECF No. 79 at 18. He asserts that the suppressed reports from CCSDPD demonstrate that Graves gave a prior inconsistent statement showing she did not have a good memory for the suspect at any point, and particularly at the time of trial. *Id*. He further

contends that without Graves's testimony excluding GG, the defense that GG was the actual shooter is more compelling and there is a reasonable probability that at least one juror would have voted to acquit Garcia. *Id*. at 18-19.

The CCSDPD suppressed reports show that Graves first described the shooter as "a dark skin Hispanic male with short hair wearing a [gray] hoodie and dark pants. She also advised that the suspect had a moustache and was of medium build and approx[imately] 5'7"". Graves, however, testified at trial that the shooter was "kind of heavy set," and did not describe the shooter as having a moustache or having dark skin thereafter. ECF No. 44-28 at 135. She also described him as "the strangest looking young man" and that he had "a strange look looking at me," at trial, but had not described him like that before. *Id*. at 123, 135.

Garcia argues that the state appellate court did not consider the totality of the evidence because it ignores the defense case, particularly the evidence implicating GG as the shooter, and the testimony provided by Dr. Pezdek, a psychologist, and Dayvid Figler ("Figler"), Garcia's attorney. Dr. Pezdek explained that the inconsistencies between Graves's statements suggest that her initial memory was weak and likely susceptible to decay over time. ECF No. 54-3 at 23. Graves viewed the shooter briefly, from a distance, at night, and amidst a chaotic scene. She also acknowledged that she was focused on the shooter's hand, which would have diminished her ability to focus on his face. In addition, Graves was shown a series of photographs and indicated that Garcia attended the school, but Garcia was not a student there. ECF No. 54-1.

At the postconviction evidentiary hearing, Figler testified regarding the importance of the suppressed evidence. ECF No. 47-14. He testified that presenting alternate suspects was the theory of defense and Graves excluded GG as an alternate suspect. *Id*. at 106. Figler testified that Graves:

> was able to, essentially, take away one of our prime alternative suspects that we were pushing the jury towards. And she did it in a very folksy and pleasant demeanor in which it would have been virtually—it was— it would have been very hard for us to beat up on her or to, in any way, sort of diminish her impact more than the very light cross-examination that I did. And I did a very light cross-examination, because I didn't have anything hard or fast to sort of take Ms. Graves and make her a defense witness.

*Id*. at 83.

8

The Court cannot conclude that there is a reasonable probability that, had the withheld evidence impeaching Graves's testimony been disclosed to the defense, the result of the proceeding would have been different. Although Graves testified that GG was not the shooter, her testimony was corroborated by other evidence. *See Smith v. Cain*, 565 U.S. 73, 76 (2012) ("[O]bserv[ing] that evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict."); *cf. Banks v. Dretke*, 540 U.S. 668, 700-01 (2004) (holding that impeachment evidence was material where it pertained to a witness whose testimony, which was "uncorroborated by any other witness," was "crucial to the prosecution"); *Wearry v. Cain*, 136 S. Ct. 1002, 1006-1007 (2016) (determining that there was a lack of confidence in the jury's verdict due to the suppression of evidence related to two witnesses' motivations for testifying because "the only evidence directly tying [the defendant] to th[e] crime was [one witness's] dubious testimony, corroborated by the similarly suspect testimony of [the other witness]"); *Hovey v. Ayers*, 458 F.3d 892, 920 (9th Cir. 2006) (corroborating testimony reduces prejudice of withheld impeachment evidence).

As noted by the state appellate court, Garcia's fingerprints were on the gun and GG's fingerprints were not on the gun. Although Garcia argues that JH was not a disinterested witness because he was a member of Puros Locos and was later shot in the head by SG, he testified that Garcia had ML's gun and that he saw Garcia shoot the victim. Although Garcia argues that EC was also a member of Puros Locos, he testified that Garcia had ML's gun and that he heard Garcia say that Garcia shot the victim.

In addition, both JH and EC testified at trial that they were members of Puros Locos. ECF No. 44-25 at 155, 44-29 at 6. At closing, defense counsel argued that Garcia was not a member of Puros Locos, that JH was shot in the head by SG, and the gang members were blaming Garcia. ECF No. 44-33 at 41-42. Defense counsel impeached JH at trial with his prior inconsistent statements at the preliminary hearing. (ECF No. 44-29 at 43-47.) Defense counsel also argued at closing that EC was a "known liar," because he testified at SG's trial that JH shot himself in the head. ECF No. 44-33 at 41-42

Further, as noted by the state appellate court, Graves indicated at trial that she forgot things due to her age. ECF No. 44-28 at 133. Although Garcia may have been able to further impeach Graves if he obtained the suppressed CCSDPD reports, there isn't a reasonable probability that the outcome of the trial would have been different. The inconsistencies in Graves's memory in that she only mentioned once that the shooter had a moustache or dark skin or that she described him as "kind of heavy set" as opposed to having a "medium build," are unlikely to be reasonably taken "to put the whole case in such a different light as to undermine confidence in the verdict," particularly considering the totality of the evidence. *Kyles*, 513 U.S. at 435.

Considering the relative nature and strength of the evidence contained in the suppressed CCSDPD reports, alongside the evidence presented at trial, the state appellate court reasonably applied federal law as determined by the Supreme Court and determined that the State's withholding of the evidence did not result in prejudice as there is no reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Accordingly, Garcia is denied federal habeas relief for Ground 1.

**b.  Ground 2—Sufficiency of the Evidence**

In Ground 2, Garcia alleges that the State presented insufficient evidence to prove Garcia committed second-degree murder in violation of the Due Process Clause of the Fourteenth Amendment. ECF No. 36 at 30. He argues that the State's primary disinterested witnesses, Principal Dan Eichelberger and Graves, were unable to identify Garcia as the shooter. *Id*. He asserts that the State's other witnesses, such as CP and MG, either did not identify Garcia or suffered serious credibility concerns. *Id*. at 31. Although JH and EC identified Garcia, they were members of the Puros Locos gang and were implicated in the crime themselves. *Id*. at 32.

**i.  State Court Determination**

The Nevada Supreme Court held:

Garcia contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381 (1998). Numerous witnesses testified that they

saw a Hispanic man of Garcia's approximate age wearing a gray hooded sweatshirt shoot [the victim] during a schoolyard brawl. JH testified that he rode in a car with Garcia to the fight, that ML handed his gun to Garcia before getting into the car, that Garcia was wearing a gray hooded sweatshirt that night, that he saw Garcia shoot Gamboa in the back as Gamboa attempted to run away, and that he saw Garcia run into the neighborhood where the gun was found. EC testified that Garcia told him that he shot a boy and that he hid the gun in a toilet. A police officer testified that he found a gun in the tank of a toilet left on the curb as garbage, one block from the school. Latent fingerprint analysis identified two prints on the gun that were matched to Garcia. Cartridge casings from the scene of the shooting matched the gun to Gamboa's shooting. We conclude that the jury could reasonably infer from the evidence presented that Garcia intentionally killed [the victim] with malice aforethought. *See* NRS 200.030(2); *Walker v. State*, 91 Nev. 724, 726 ("[It is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness.").

ECF No. 45-13 at 2-3.

## ii. Applicable Legal Standard

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324, n.16). The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the record, and must defer to that resolution. *Jackson*, 443 U.S. at 326; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (reaffirming *Jackson* standard).

The Supreme Court has emphasized that claims of insufficiency of the evidence "face a

1     high bar in federal habeas proceedings ...." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per*

2     *curiam*). When the deferential standards of AEDPA and *Jackson* are applied together, the

3     question for decision on federal habeas review is whether the state court's decision unreasonably

4     applied the *Jackson* standard to the evidence at trial. *See, e.g., Juan H. v. Allen*, 408 F.3d 1262,

5     1274–75 (9th Cir. 2005) (citations omitted).

6                   **iii.  Analysis**

7         The Nevada Supreme Court's ruling was neither contrary to nor an objectively

8     unreasonable application of clearly established law as determined by the United States Supreme

9     Court. Garcia's argument that the state appellate court "focused on the state's case to the

10    exclusion of the defense," is not persuasive. ECF No. 79 at 26. The state appellate court

11    summarized the evidence and found that "the jury could reasonably infer from the evidence

12    presented that Garcia intentionally killed Victor Gamboa with malice aforethought." ECF No.

13    ECF No. 45-13 at 3.

14         Garcia asserts that every witness that the State presented either had a motive to lie or the

15    defense had proved had already lied. *Id*. As discussed previously, the defense at trial highlighted

16    such motives, such as JH and EC being members of the same gang and the motivation to protect

17    their fellow members, or impeached witnesses with their prior inconsistent statements. As noted

18    by the state appellate court, latent fingerprint analysis identified fingerprints on the gun matching

19    Garcia's fingerprints. At trial, the defense highlighted testimony that the gun was passed around,

20    that "everybody touched the guns," and that Garcia's fingerprints on the gun were not consistent

21    with shooting it. ECF No. 44-33 at 58-61. "A jury's credibility determinations are therefore

22    entitled near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 960, 957 (9th Cir.

23    2004) (quoting *Jackson*, 443 U.S. at 326). Based on the evidence in the record, and viewing the

24    evidence in the light most favorable to the prosecution, the Court concludes that a rational jury

25    could have found the essential elements of the crimes beyond a reasonable doubt. Garcia is

26    denied federal habeas relief for Ground 2.

27            **c.  Ground 3—Unduly Suggestive Prior In-Court Identification**

28         In Ground 3, Garcia alleges that the trial court violated the Due Process Clause of the

Fourteenth Amendment by admitting an unduly suggestive, prior in-court identification at trial. ECF No. 36 at 36. MG made an in-court identification of Garcia during the preliminary hearing. Garcia argues that such in-court identification was highly suspect because the only people in the courtroom were the lawyers and Garcia sitting at the defense table. ECF No. 79 at 35. MG, however, could not identify Garcia in the past and had described the shooter before the Grand Jury as wearing a black sweater, rather than the gray hoody other witnesses reported, and as looking 18 or 19, not 16. ECF No. 44-28 at 216. At the preliminary hearing, she agreed that her description of the shooter did not match Garcia. *Id*. at 222.

MG could not identify Garcia as the shooter at trial. The defense moved to suppress the potential in-court identification, but the trial court denied the motion finding her identification as reliable, noting that the defense could question her prior identification on cross-examination. ECF No. 44-9. Garcia argues that her identification testimony was central because the State's case was based on circumstantial evidence. ECF No. 79 at 37.

### i.  State Court Determination

The Nevada Supreme Court held:

> Garcia contends that the district court erred in denying his motion to suppress evidence of MG's identification of Garcia at the preliminary hearing on the ground that the identification was not reliable. We review a district court's ruling on a motion to suppress identification testimony for abuse of discretion because it is an evidentiary decision. *See Mclellan v. State*, 124 Nev. 263, 269 (2008). An in-court identification must be unnecessarily or impermissibly suggestive, creating a risk of irreparable misidentification, to warrant suppression under *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967), and this risk is less present when an identifying witness is subject to immediate challenge by cross-examination. *Baker v. Hocker*, 496 F.2d 615, 617 (9th Cir. 1974); *see United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir. 1986) (noting problem with suggestive pretrial identifications is that witness later identifies individual in court on basis of prior suggestive identification, rather than from personal recollection); *Baker v. State*, 88 Nev. 369, 374 n.3 (1972) (observing that other jurisdictions had reversed where a suggestive identification at preliminary hearing tainted witness's trial identification). MG did not identify Garcia at trial as the perpetrator-rather, she acknowledged that she identified the shooter at the 2008 preliminary hearing and stated that she did not recognize him at the 2013 trial-and, accordingly, MG's prior identification did not taint her trial testimony. The district court considered the issue of MG's prior identification moot because she did not identify him at trial. MG's identification of Garcia at the preliminary hearing did not constitute a reversible due process violation when MG was subject to immediate and thorough cross-examination at the preliminary hearing and at trial and did not identify Garcia at trial. We conclude that the district court did not abuse its discretion.

1    ECF No. 45-13 at 3-4.

2                              **ii.   Applicable Legal Standard**

3           To prevail on a constitutional suggestive identification claim, the petitioner must

4    establish that, under the totality of the circumstances, "the confrontation conducted ... was so

5    unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied

6    due process of law." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (<u>citing</u> *Stovall v.*

7    *Denno*, 388 U.S. 293, 301–02 (1967)). The bare fact that a confrontation was suggestive does not

8    establish constitutional error. "It is the likelihood of misidentification which violates a

9    defendant's due process rights." *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *see also Manson v.*

10   *Brathwaite*, 432 U.S. 98, 114 (1977)(the mere presence of suggestive factors in a pretrial

11   identification procedure does not require exclusion of identification evidence; "reliability is the

12   linchpin in determining the admissibility of such evidence."); *United States v. Bagley*, 772 F.2d

13   482, 492 (9th Cir. 1985)("If we find that a challenged procedure is not impermissibly suggestive,

14   our inquiry into the due process claim ends"; however "[i]f under the totality of the

15   circumstances the identification is sufficiently reliable, identification testimony may properly be

16   allowed into evidence even if the identification was made pursuant to an unnecessarily

17   suggestive procedure." (citation omitted)).

18          Five factors should be considered in determining the reliability of identification evidence:

19   (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's

20   degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of

21   the defendant; (4) the witness's level of certainty when identifying the suspect at the

22   confrontation; and (5) the length of time that has elapsed between the time and the confrontation.

23   *Biggers*, 409 U.S. at 199-200.

24                              **iii.   Analysis**

25          The Nevada Supreme Court's ruling was neither contrary to nor an objectively

26   unreasonable application of clearly established law as determined by the United States Supreme

27   Court.

28          As noted by the state appellate court, MG did not identify Garcia at trial. She

acknowledged that she identified the shooter at the preliminary hearing. *See Baker*, 496 F.2d at 617 (finding no due process violation where an identification was made at a preliminary hearing where the petitioner was seated at counsel table beside two men who had already been identified as involved in the relevant crime). In addition, Garcia's counsel availed himself of the opportunity to cross-examine MG regarding her identification of Garcia at the preliminary hearing. *See Simmons v. United States*, 390 U.S. 377, 384 (1968) (finding the "danger" of convictions based on misidentifications from photographic lineups "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error"). Accordingly, the Nevada appellate court's conclusion that the identification of Garcia at the preliminary hearing did not violate Garcia's due process rights was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Garcia is denied federal habeas relief for Ground 3.

### d. Ground 4—Competence of Witness

In Ground 4, Garcia alleges that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by denying his request to have a witness examined by a psychiatrist and by allowing an incompetent witness to testify. ECF No. 36 at 37-40. He asserts that because JH suffered from a brain injury as he was shot in the head, JH was prone to memory and cognitive deficits and feared harm from the group of people that shot him. *Id*. at 38. Garcia contends that JH was an incompetent witness. *Id*. at 40.

### i. State Court Determination

The Nevada Supreme Court held:

Garcia argues that the district court erred in denying his motion to compel a psychological examination of JH, who he argued was rendered incompetent to testify by a brain injury. This court will uphold the district court's finding of competency absent a clear abuse of discretion, *Evans v. State*, 117 Nev, 609, 624 (2001), and its decision whether to deny a request for a psychological examination for an abuse of discretion, *Abbott v. State*, 122 Nev. 715, 723 (2006). The district court should order an examination when a defendant demonstrates a compelling need for an examination, taking into account whether there is little or no corroboration of the offense beyond the challenged testimony and whether reasonable grounds support that the victim's mental state has affected his veracity. *Id*. at 723-25. The district court found that JH was able to perceive an event and competently relate it back and that contradictory assertions in his statements were subjects for cross-examination. The district court further ordered disclosure of JH's

medical records for examination by Garcia's expert. In his testimony, JH demonstrated an ability to present his personal recollections without becoming confused and did not exhibit difficulties when Garcia's counsel attempted to confuse him during cross-examination, such that no compelling need for a psychological examination was evident. Having considered the record, we conclude that the district court did not abuse its discretion in denying Garcia's motion for a psychological examination.

ECF No. 45-13 at 4-5.

### ii.  Applicable Legal Standard

It is not for this court to decide whether, as a matter of state evidence law, the trial court was correct in admitting the testimony of JH. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." We do not review the admission for error; "we may only consider whether [the petitioner's] conviction violated constitutional norms." *Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir.1991).

With respect to JH's competency, this court considers only whether the state court determination violated constitutional norms. *See Walters v. McCormic*, 122 F.3d 1172, 1175 (9th Cir. 1997). Although the United States Supreme Court has articulated this "general principle that evidence that is so extremely unfair that its admission violates fundamental conceptions of justice may violate due process," *Alberni v. McDaniel,* 458 F.3d 860, 864 (9th Cir.2006), the Court has "made very few rulings regarding the admission of evidence as a violation of due process." *Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir.2009). In *Walters*, the Ninth Circuit stated that where state or federal law provides that a competency determination must be made, failure to conduct an appropriate hearing implicates a defendant's due process rights. 122 F.3d at 1176 (citing *Sinclair v. Wainwright*, 814 F.2d 1516, 1523 (11th Cir. 1987). "After a defendant raises a colorable objection to the competency of a witness, the trial court must perform 'a reasonable exploration of all the facts and circumstances' concerning competency." 122 F.3d at 1176 (quoting *Sinclair*, 814 F.2d at 1523).

### iii.  Analysis

The state appellate court provided that under Nevada law, "[t]he district court should

order an examination when a defendant demonstrates a compelling need for an examination, taking into account whether there is little or no corroboration of the offense beyond the challenged testimony and whether reasonable grounds support that the victim's mental state has affected his veracity." ECF No. 45-13 at 4-5. Although the trial court denied Garcia's motion for evidentiary hearing, the trial court nonetheless conducted an inquiry as to whether there was a need to conduct an competency examination of JH. ECF No. 44-13. The trial court reviewed the record and found that JH was competent because he could perceive an event and relate it back. *Id*. at 34. At trial, JH demonstrated an ability to present his personal recollections without being confused even on cross-examination.

Given the absence of any "clearly established" United States Supreme Court precedent controlling whether a witness was incompetent to testify under state law and the Ninth Circuit's holding in *Walters*, Garcia's claim to habeas relief predicated on the admission of JH's testimony must be denied. The Court finds that Garcia does not demonstrate a violation of due process. Accordingly, Garcia is denied federal habeas relief for Ground 4.

### e. Ground 5—Presentation of Material Witness

In Ground 5, Garcia alleges that the State violated his right to due process by using a material witness warrant for EC. ECF No. 36 at 40. He asserts that presenting EC in front of the jury in chains was a tactic to bolster his credibility based on the perception that EC was forced to testify against his friend. *Id*. at 40-41. Garcia argues that the State engaged in tactics designed to ensure EC testified in a way favorable to the State, which constituted prosecutorial misconduct. ECF No. 76 at 50.

### i. State Court Determination

The Nevada Supreme Court held:

> Garcia argues that his due process rights were violated when EC testified in shackles pursuant to a material witness warrant because this bolstered EC's credibility. Courts should not compel an incarcerated witness to appear in prisoner attire absent unusual circumstances. *Hightower v. State*, 123 Nev. 58, 59 (2007). The defendant bears the burden to timely request that an incarcerated witness not appear in prisoner attire. *Id*. Garcia failed to timely object to EC's appearance or request that he appear without shackles. We therefore review his allegations of error for plain error. *Gallego v. State*, 117 Nev. 348, 365 (2001), *abrogated on other grounds* by *Nunnery v. State*, 122 Nev. Adv. Op. 69 (2011). Garcia offers no

support for his argument that the jury would give EC greater credibility because he appeared in shackles. *See Hightower*, 123 Nev. at 58 (noting this court's prior observation that courts have almost uniformly recognized that appearing in prison clothing may undermine the witness's credibility). Further, Garcia's counsel drew attention to EC's detention in beginning cross-examination and his handcuffs during closing argument. We conclude that Garcia has not demonstrated plain error.

ECF No. 45-13 at 5.

### ii.  Applicable Legal Standard

As a matter of state law, it is not for this court to determine whether the trial court was correct in issuing a material witness warrant for EC. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Prosecutorial misconduct warrants federal habeas relief if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted). A defendant's constitutional right to due process of law is violated if the prosecutor's misconduct renders a trial "fundamentally unfair." *Id.* at 181–83; *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation and internal quotation marks omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).

### iii.  Analysis

The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Garcia has not established that the prosecution engaged in conduct that so infected the trial with unfairness as to make the resulting conviction a denial of due process. He fails to

establish that the prosecution improperly bolstered the credibility of EC by having him appear in court in shackles or chains. EC admitted during the State's direct examination that he did not want to testify. ECF No. 44-25 at 153. As noted by the state appellate court, Garcia did not object to EC's appearance or request that he appear in court without shackles. In fact, Garcia's counsel even highlighted in closing argument that the State brough EC in to testify in handcuffs. ECF No. 44-33 at 49. Nor does Garcia establish, and the state court record does not demonstrate that the prosecution acted in a manner to ensure that EC testified favorably for the prosecution. The State proffered to the trial court that no promises or threats were made to EC or that if EC did not testify consistent with his prior statement that there would be any consequences. ECF No. 44-25 at 229-230. Accordingly, Garcia is denied federal habeas relief for Ground 5.

### f.  Ground 6—Prejudicial Gang Enhancement

In Ground 6, Garcia alleges that the state violated his due process rights by proceeding to trial with a prejudicial gang enhancement despite a lack of evidentiary support in violation of his Fifth and Fourteenth Amendment rights. ECF No. 36 at 42. Despite objections from the defense, Garcia alleges that the State committed prosecutorial misconduct by pursuing a gang enhancement theory and mentioning gangs in jury selection, opening statements, and witness testimony. *Id*. On the fourth day of trial, the trial court precluded the State's gang expert from testifying because none of the witnesses testified that Garcia was a member of Puros Locos. The defense then filed a motion for mistrial that was denied.

### i.  State Court Determination

The Nevada Supreme Court held:

Garcia argues that the State committed prosecutorial misconduct by presenting prejudicial evidence in support of a gang enhancement when the trial evidence did not meet the statutory criteria for a criminal gang. We review claims of prosecutorial misconduct for improper conduct and then for whether reversal is warranted. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465,477 (2008). A group of persons may constitute a criminal gang when it has (1) a common name or identifying symbol; (2) particular conduct, status, and customs; and (3) felonious activities as one of its common activities. [FN 1] NRS 198.168(8). The record shows that the discovery supported the State's decision to initially charge Garcia with a gang enhancement: (1) in separate recorded statements, EC, JH, and ML stated that Garcia was in their gang named "Puros Locos" or "PL," and several purported members had "Puros Locos" tattoos; (2) JH testified that he would participate in fights and spray paint "PL' on walls as part of the gang; and (3) JH

testified in an earlier trial that he and ML had committed the felonious acts of giving away controlled substances to other gang members who were under the age of 18, and further that another gang member ordered him to kill someone. The State promptly amended the indictment to remove the gang enhancement when the district court concluded that trial testimony did not support the gang enhancement and prevented the State's gang expert from testifying. We conclude that the State's conduct was not improper because discovery reasonably suggested that the evidence supported a gang enhancement, cf. *Williams v. State*, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987) (holding that a prosecutor may not argue facts or inferences not supported by the evidence), and the State withdrew the enhancement when it could no longer reasonably argue that the evidence satisfied NRS 193.168(8).

ECF No. 45-13 at 5-6.

### ii. Analysis

The state appellate court reasonably rejected the claim that the prosecutor committed misconduct by pursuing a gang enhancement, on the basis that it did not so infect the trial with unfairness as to result in denial of due process. *Richter*, 562 U.S. at 102. This court may not second-guess state evidentiary rulings, except for the limited purpose of ascertaining whether the admission of evidence was so lacking in a nexus to the issues of the case that the trial was rendered fundamentally unfair. *See Jammal*, 926 F.2d at 920. Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." *Id*. at 920. Evidence must "be of such quality as necessarily prevents a fair trial." *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th Cir.1986)). There is no "clearly established federal law" that the federal constitution is violated by the admission into evidence of gang affiliation in a case where gang evidence is relevant to other issues in the case. *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009) (rejecting petitioner's claim that the trial court violated his right to due process in allowing the opinion testimony because it improperly intruded upon the province of the jury).

As noted by the state appellate court, there was sufficient gang evidence for the prosecution to make a theory of its case gang based. Further, the testimony made clear that Garcia was not a member of Puros Locos resulting in the withdrawal of the gang enhancement. Despite ultimately ruling that the State's gang expert could not testify and withdrawal of the gang enhancement, evidence relating to the behavior patterns of gang members and the possible link between Garcia's actions and Puros Locos was a permissible inference the jury could draw

from the evidence presented by the prosecution. *See Windham v. Merkle*, 163 F.2d 1092, 1104 (9th Cir. 1998) (finding that gang evidence was admissible to "demonstrate Windham's motive for participating in alleged crimes"). Accordingly, Garcia is denied federal habeas relief for Ground 6.

### III.   Certificate of Appealability

This is a final order adverse to Garcia. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

### IV.   Conclusion

It is therefore ordered that Petitioner Evaristo Jonathan Garcia's Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 36) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Court directs the Clerk of Court to substitute Jeremy Bean for Respondent Gittere, enter judgment, and close this case.

DATED: October 1, 2025

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE